UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARY HURD BROWN,

                Plaintiff,

*vs.*

NEW YORK CITY DEPARTMENT OF EDUCATION,

                Defendant.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

20-cv-2424

# INTRODUCTION[1]

Plaintiff, Mary Hurd Brown, requests that the Court deny Defendant's motion to dismiss. First, Plaintiff has alleged conduct that occurred within the statute of limitations for both the Age Discrimination in Employment Act on or after May 2018 and Section 504 of the Rehabilitation Act on or after March 2017. Second, Plaintiff has stated a claim for relief under those statutes.

In construing Plaintiff's response, Plaintiff asks that the Court read any new additional facts asserted in this opposition brief as supplementing the operative complaint, as the Court may do with pro se litigants. *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (overturning the district court's grant of dismissal where the complaint and opposition papers to a motion to dismiss when combined stated a claim upon which relief could be granted).

In the alternative, Plaintiff requests that the Court grant Plaintiff leave to amend Plaintiff's complaint to address any deficiencies identified by the Court. *Nielsen*, 746 F.3d at 62. ("Generally, leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim. A pro se

---

[1] Portions of this document was prepared with assistance from the New York Legal Assistance Group's Legal Clinic for Pro Se Litigants in the SDNY.

complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.") (internal quotation marks and citation omitted).

## **ARGUMENT**

Here, Defendant has raised various arguments against the causes of action Plaintiff alleged under federal law. Plaintiff asks the Court to construe the complaint liberally. Plaintiff does not intend to waive or forfeit any of Plaintiff's timely causes of action under federal law.

### I. PLAINTIFF HAS STATED A CLAIM FOR RELIEF BASED ON DISABILITY DISCRIMINATION UNDER SECTION 504 OF THE REHABILITATION ACT

The Rehabilitation Act of 1973, § 504 prohibits employers who receive federal funding from discriminating against persons with disabilities. In this case, Plaintiff has alleged that Mr. Friedman, the supervisor of the Manhattan Attendance Teachers working at Affinity school, failed to accommodate her disability after March 2017 (damaged knees that impair her ability to perform the major life activity of walking, particularly up and down stairs). To the contrary, he deliberately put her in situations where her disability made it more difficult for her to do her job than for someone without her disability: he assigned her to locations it was difficult to reach without going up and down stairs to take the subway and did not allow her to work remotely.

- In October 2017, Mr. Friedman refused to sign TRAC submission allowing for personal car usage for required field work. Mr. Friedman continued to refuse to sign Plaintiff's TRAC submissions through October 2019. Mr. Friedman did not give a reason as to why he would not approve Plaintiff's personal car usage but would not do so.

- During the 2018-2019 school year Mr. Gabbard, principal of Plaintiff's payroll school, and Mr. Friedman wanted to specifically set up a meeting to "discuss what stairs

[Plaintiff] could climb," which was extremely humiliating and spiteful given her chronic knee problems. Mr. Friedman was aware of Plaintiff's disability, since this resulted from an injury sustained on the job back in 1994. Plaintiff's recovery from the injury extensively documented because of the numerous microscope surgeries and injections which culminated in a bi-lateral knee replacement in 2013. These documents are all part of Plaintiff's medical file/record, which Mr. Friedman had access to.

- A fall in 2015 caused a fracture of Plaintiff's kneecap and was initially approved as a line of duty injury in 2015. This was suddenly changed in 2018 when an Affinity HR manager who had access to medical records reversed the 22 medical days that were previously applied to line of duty injury. This created a financial hardship for Plaintiff.
- During the 2018-2019 school year, Mr. Gabbard, who would be the rating officer of Plaintiff's performance, revoked her prior early work hours from 7:30-2:50. She instead had to work from 8:30-3:50. This was a hardship because the Access-A-Ride arrival time was between 6:30 and 7:00 a.m. Prior to the 2018-2019 school year, Plaintiff's contract stated her hours were from 8:30 a.m. to 3:50 p.m., but attendance teachers were allowed to request earlier hours and work those hours if approved by the principal. Plaintiff asked to work from 7:30-2:50, which she had done for about fifteen years prior. Mr. Gabbard revoked Plaintiff's earlier work hours, which forced Plaintiff to stay at the school until 3:50 p.m. even though she was arriving by 7:00 a.m. Mr. Gabbard did not give Plaintiff a reason when he did not let her come in earlier. As a result, Plaintiff was forced to be at the school for longer than employees who were not reliant on Access-A-Ride.
- During the 2018-2019 school year, Mr. Friedman and Mr. Gabbard revoked the past practice of having a first or second floor working space at an assigned school or assigning

Plaintiff to a modern office building with working elevator access. Plaintiff told Mr. Friedman that she was not able to walk up and down stairs. Mr. Friedman said words to the effect of, "that's where Mr. Gabbard is, so that's where you have to be."

- During 2018-2019, Mr. Gabbard mandated that attendance staff sign attestation section on time sheet. This was a hardship because Mr. Gabbard required it signed by the staff of the school Plaintiff was attending. It was difficult to locate the principal to sign off that Plaintiff had been there. Previously, Plaintiff would have her contact person at the school sign her time sheet. Looking for the principal required Plaintiff to walk more when she had not been required to do so for fifteen years prior.

- During 2018-2019, Mr. Gabbard set weekly attendance meetings, which Plaintiff had to attend in person every Monday at 9:00 a.m. on the fourth floor, 10:00 a.m. on the fifth floor, and 11:00 a.m. on the seventh floor respectfully. This created a strain on Plaintiff's knees, which compounded the stress caused by using public transportation to physically report at Mr. Gabbard's school.

- The 2018-2019 school year started with new directives just for Plaintiff via Mr. Gabbard. Mr. Gabbard informed Plaintiff that she had to have school staff sign her time sheets, that she had to report each morning to his school, which as a Citywide Attendance Teacher, was never a previous requirement and was inconsistent with the guidance from the Supervisor Manual from Central.

- In November 2018, Plaintiff requested a medical accommodation, which would allow Plaintiff to arrive and leave the school earlier. Plaintiff's accommodation was approved in or around September of 2019. Until that time, Plaintiff worked later hours, which did not align with the Access-A-Ride schedule.

4

## II. PLAINTIFF HAS STATED A CLAIM FOR RELIEF BASED ON HOSTILE WORK ENVIRONMENT

As set forth above, Plaintiff alleges facts about her treatment at work are sufficiently hostile and pervasive to create a hostile work environment based on her disability. In addition, in October 2018, Mr. Friedman allowed Mr. Gabbard to bully her and berate her in front of several staff members. In doing so, Mr. Gabbard referred to her "extended years of service" in a derogatory way, and thereby created a hostile work environment under the ADEA.

## III. PLAINTIFF HAS SUFFERED HARM AS A RESULT OF THE MISTREATMENT SHE SUFFERED

Mr. Friedman and Mr. Gabbard's treatment and concerted efforts against Plaintiff have resulted in suicidal ideation, permanent and lasting mental health issues. It has caused flare-ups of her blood pressure due to the enormous amounts of stress applied as a result of these false charges and numerous letters being placed in her file and the subsequent hearings.

These actions and their impact are ongoing and continue to this day, impacting her future employment, retirement options, health and overall livelihood. Plaintiff has been forced because of the unyielding and unrelenting scrutiny of these two individuals to heal and have had multiple obstacles she has had to overcome. The "failure" of Plaintiff's knee replacement is due to the increased mobility requirements placed on her by Mr. Friedman and Mr. Gabbard's actions, which has caused her to rely on a walker and Access-A-Ride to this day.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny the motion to dismiss. First, Plaintiff has alleged conduct that occurred within the statute of limitations for both the Age Discrimination in Employment Act and Section 504 of the Rehabilitation Act.

Second, Plaintiff has clearly alleged sufficient facts to make out actionable claims against Defendant under the ADEA and Rehabilitation Act.

In the alternative, Plaintiff requests that the Court grant Plaintiff leave to amend Plaintiff's complaint to address any deficiencies identified by the Court, and any other relief this Court deems just and proper.

Dated: February 11, 2021

Respectfully submitted,

Mary Hurd Brown, *pro se*
P.O. Box 1113
Bronx, NY 10451
(917) 583-6385