**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
MARY HURD BROWN,                                           :
                                                          :
                          Plaintiff,                      :          20-CV-2424 (VEC) (OTW)
                                                          :
                    -against-                             :          **REPORT & RECOMMENDATION**
                                                          :
NEW YORK CITY DEPARTMENT OF                               :
EDUCATION,                                                :
                                                          :
                          Defendant.                      :
                                                          :
------------------------------------------------------------x

     **ONA T. WANG**, **United States Magistrate Judge**:

     **To the Honorable VALERIE E. CAPRONI, United States District Judge:**

     Defendant New York City Department of Education ("DOE") moves to dismiss the

complaint (ECF 9, hereinafter known as "Am. Compl.") by Plaintiff Mary Hurd Brown. (ECF 17,

hereinafter known as the "Motion"). Plaintiff alleges age discrimination under the Age

Discrimination in Employment Act of 1967, 29 U.S.C. §§ 612-34, ("ADEA"); disability

discrimination under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-96 and the Americans

with Disability Act of 1990, 42 U.S.C. §§ 12101-213 ("ADA"); and hostile work environment and

retaliation claims under the ADEA, the Rehabilitation Act, and the ADA. Plaintiff also states

analogous claims under the New York State Human Rights Law, N.Y. Exec. Law. §§ 290-97,

("NYSHRL") and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101-31

("NYCHRL"). For the reasons stated below, I recommend that the Motion be **GRANTED** with

leave to amend.

## I.  Background

### A.  Facts

Plaintiff was born in 1949 and has worked for the DOE since 1988.[1] Am. Compl. ¶ 1.[2] Since 2001, Plaintiff has worked as an attendance teacher. Am. Compl. ¶ 2. The attendance teachers are assigned to one school for payroll purposes, *i.e.* the "payroll school," but service multiple schools at any given time. Am. Compl. ¶ 2. The payroll schools' principals review and assess attendance teachers. Am. Compl. ¶ 2.

Plaintiff had a knee replacement surgery in 2013 and is disabled due to that surgery because her "damaged knees [] impair her ability to perform the major life activity of walking, particularly up and down stairs." Am. Compl. ¶ 3; ECF 25 at 2.[3] Further, Plaintiff fell in 2015, resulting in a kneecap facture was "initially approved as a line of duty injury . . . ." (ECF 25 at 3).

### 1.  *Academic Year of 2016-17*

Beginning in September 2016, Eric Friedman began working at Affinity Field Support Center as Plaintiff's direct supervisor. Am. Compl. ¶ 4. Part of Plaintiff's job as an attendance teacher included making home visits to students. Am. Compl. ¶ 31. At the start of the 2016-2017 school year, however, Mr. Friedman declined to approve: (1) "her use of a personal vehicle for [her work]" (Am. Compl. ¶ 5); or (2) her "TRAC submission allowing for personal car

---

[1] For purposes of deciding the Motion, the Court accepts as true all facts alleged by Plaintiff, *see Krassner v. 2nd Ave Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007) and draws all inferences in the Plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003).

[2] Paragraph references to Plaintiff's Amended Complaint refer to Plaintiff's "Addendum," to her Amended Complaint (ECF 9).

[3] ECF 25 is Plaintiff's Response in Opposition to Defendant's Motion to Dismiss. (ECF 25). Considering Plaintiff's *pro se* status, I read any new facts asserted in ECF 25 as supplementing the operative complaint. For a *pro se* party, "the Court may consider new facts raised in opposition papers to the extent that they are consistent with the complaint, treating the new factual allegations as amending the original complaint." *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (citing *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013)).

usage."[4] (ECF 25 at 2). Plaintiff states that her personal car use had "been approved for years by previous supervisors," and that "younger attendance teachers . . . did not have their car usage privileges revoked." Am. Compl. ¶ 5. Mr. Friedman "refused to sign TRAC submission allowing for personal car usage for required field work . . . through October 2019." (ECF 25 at 2). As a result, Plaintiff was "forced to access the subway in order to fulfill home visit requirements." Am. Compl. ¶ 31. Plaintiff states that she is a beneficiary of Access-A-Ride—an MTA program that provides transportation services to individuals "who are proven to have needs that match the ADA's requirements." *See* ECF 25 at 3; "How to Apply or Recertify for Access-A-Ride" at https://new.mta.info/accessibility/paratransit/how-to-apply-or-recertify-for-access-a-ride. Plaintiff does not address whether she could use Access-A-Ride for home visits.

In December 2016, Plaintiff alleges that Mr. Friedman "verbally assaulted and publicly humiliated" her on multiple occasions. Am. Compl. ¶ 6. These incidents included one in which Mr. Friedman "scream[ed]" that Plaintiff "was old and that he would take away [her] job and [her] license." Am. Compl. ¶ 7. The interaction was severe enough that a facilitator had to intervene. *Id.* This particular incident was deeply upsetting to Plaintiff, who went to urgent care, where she was directed to "stay home" because of "extremely high blood pressure." Am. Compl. ¶ 7. Plaintiff reported the incident to Maria Mysliwy, Mr. Friedman's supervisor, but Defendant did not take remedial action. Am. Compl. ¶ 7.

---

[4] It is not clear what "TRAC" is, whether reimbursement is customarily provided for home visits, or whether Plaintiff was permitted to use her personal car for home visits, but chose not to because she would not be reimbursed. Plaintiff alleges that Mr. Friedman said that she would not receive financial assistance, such as a metrocard, to use the subway for home visits. Am. Compl ¶ 32. Plaintiff does not allege whether anyone else received financial assistance for transportation to home visits, or whether anyone else used the subway to make home visits.

On June 27, 2017, Plaintiff faced a disciplinary hearing for attending non-DOE conferences on June 5 & 6, 2017, for which Defendant "claim[ed] [she] did not have authorization to go"; and Defendant docked two days' pay from Plaintiff's salary. Am. Compl. ¶¶ 8, 14. At that disciplinary hearing, Plaintiff was also told that she received an "unsatisfactory" rating, which was her second unsatisfactory rating in her many years of working for the DOE. Am. Compl. ¶ 9.[5] Principal Patricia Mineya provided Plaintiff the rating, but Plaintiff states there were no observations of her work that could justify such a rating. Am. Compl. ¶ 9.

2. *Academic Year of 2017-18*

In September 2017, Plaintiff filed a discrimination complaint with the DOE's Office of Equal Opportunity ("OEO"). Upon Mr. Friedman learning of the complaint, he began "a long and enduring campaign of retaliation against [Plaintiff] by himself and those closely associated with him." Am. Compl. ¶ 10. As a result, Plaintiff and "several other senior and older attendance teachers . . . were all removed from their regularly assigned schools and assigned to schools which required an increase in travel time." Am. Compl. ¶ 11. Further, Defendant placed "additional restrictions and stipulations" on Plaintiff and other senior staff, including "daily payroll reporting, which previously was never required." Am. Compl. ¶ 12. Mr. Friedman also rejected all of Plaintiff's "TRAC Travel reimbursements" for the 2016-2017 year and some of the requested reimbursements for the 2017-2018 year.[6] Am. Compl. ¶ 22.

---

[5] The first and only prior unsatisfactory rating was in the 2007-08 school year. Am. Compl. ¶ 9.

[6] Plaintiff learned of Mr. Friedman's rejection of all TRAC Travel reimbursements in June 2018. Am. Compl. ¶ 22.

In this year, Plaintiff received two disciplinary letters from Principal Mineya: In September 2017, Plaintiff was explaining to a group of three children why they should not cut class, when "[o]ne student began to raise her voice and use curse words at [Plaintiff]." Am. Compl. ¶ 13. In connection with this interaction, Plaintiff received a disciplinary letter from Principal Mineya for "child abuse." Am. Compl. ¶ 13. Plaintiff received another disciplinary letter from Principal Mineya after Plaintiff "allegedly referred to her as 'woman'" in November 2017. Am. Compl. ¶ 15.

In December 2017, Plaintiff had a DOE rating appeal hearing about her "unsatisfactory" rating for the 2016-17 school year. Am. Compl. ¶ 16. Principal Mineya declined to appear at the hearing; instead, Mr. Friedman attended in her absence, claiming that he (Mr. Friedman) was authorized to issue the unsatisfactory rating because "he was [her] rating officer and superior." Am. Compl. ¶ 16. Plaintiff alleges that such behavior is "not common practice and further illustrated Mr. Friedman's discriminatory and retaliatory intent against [her]." Am. Compl. ¶ 16.

Due to Mr. Friedman's and his unspecified friends' "continual verbal harassment" of Plaintiff, "both professionally and personally," she began weekly therapy session through the UFT MAP program to help manage anxiety and suicidal thoughts. Am. Compl. ¶¶ 17, 18. Plaintiff does not state what the "UFT MAP" program is, or any details about it.

On January 31, 2018, Plaintiff began experiencing chest pains "at a conference" and "was sent to the hospital." Am. Compl. ¶ 19. As a result of this incident, Plaintiff requested a six-month medical sabbatical, and did not go to work from February 1, 2018 until April 25, 2018, when Plaintiff learned that Defendant denied her request. Am. Compl. ¶¶ 19-20. Plaintiff

learned in October 2018 that Defendant retroactively withdrew payment for the days she had

taken off (from February 1, 2018 to April 25, 2018) related to this incident.[7] Am. Compl. ¶ 36.

On June 26, 2018, Plaintiff received an "unsatisfactory" rating for the 2017-18 school

year, without being provided an "explanation or improvement sheet." Am. Compl. ¶ 21. The

rating was not based on any formal observations. Am. Compl. ¶ 21.

3. *Academic Year of 2018-19*

The following year, Mr. Friedman assigned Plaintiff to Mathers High School. Am. Compl.

¶ 23. There, Principal Larry Gabbard required Plaintiff to submit a time sheet that must be

signed by a "point person at [her] assigned location." Am. Compl. ¶ 24. This was a break from

past practice for Plaintiff; when she asked about the new directive, Principal Gabbard told her

that she must comply or she would receive an unsatisfactory rating for the year. Am. Compl.

¶ 24. Principal Gabbard also directed Plaintiff "to sit in the main office all day" and required

that she report "any reason I would have leave the office, including going to the bathroom."

Am. Compl. ¶ 25. Presumably, although not pleaded, no other similarly-situated employee was

required to do so.

Principal Gabbard also informed Plaintiff she "would not be needed at the East Side

School" and that she should not report there unless specifically directed. Am. Compl. ¶ 26.

Plaintiff does not state what the East Side School is or how it was connected to Mathers High

School. Sometime after September 2018, Mr. Friedman and Principal Gabbard stopped

providing Plaintiff a working space at a low-level floor and did not assign her to a location with

---

[7] All events up to this point are presumably time barred to support Plaintiff's claims, with the exception of her hostile work environment claim. *See infra* Section II.A.

"working elevator access." (ECF 25 at 3-4). Plaintiff told Mr. Friedman that she was not able to walk up and down stairs, but Mr. Friedman said something like, "that's where Mr. Gabbard is, so that's where you have to be." (ECF 25 at 4). Each week, Plaintiff was required to attend weekly attendance meetings on either the fourth, fifth or seventh floor. (ECF 25 at 4). In 2018-2019, Principal Gabbard mandated that all "staff sign [an] attestation section on [their] time sheet," and specifically that it be signed by the staff of the school individuals are attending. (ECF 25 at 4). Plaintiff struggled to locate the principal to sign off that Plaintiff was present, which required Plaintiff "walk more when she had not been required to do so for fifteen years prior." (ECF 25 at 4).

Throughout the 2018-19 school year, Plaintiff continued to experience a series of work-related issues. On September 28, 2018, Principal Gabbard issued Plaintiff a "time sheet that he had designed specifically for [her]," which was contradictory to the guidance from the "Supervisor Manual from Central." Am. Compl. ¶ 27; ECF 25 at 4. Other employees were not given custom time sheets.[8] Am. Compl. ¶ 27. At some point in the year, Principal Gabbard and Mr. Friedman wanted to "set up a meeting to 'discuss what stairs [Plaintiff] could climb,' which was extremely humiliating and spiteful given her chronic knee problems." (ECF 25 at 2-3). Principal Gabbard also "revoked" Plaintiff's early work hours of 7:30-2:50, which were changed to 8:30-3:50. (ECF 25 at 3). Since Plaintiff uses Access-A-Ride to travel to and from work, this resulted in Plaintiff being at the school several hours longer, since the Access-A-Ride arrived at the school between 6:30 and 8:00 am. (ECF 25 at 3). Plaintiff does not provide any further details on her use, the availability, or timing of the Access-A-Ride as it relates to her claims.

---

[8] Plaintiff does not allege how the time sheet was customized, or why that was offensive to her.

On October 9, 2018, Plaintiff had another disciplinary hearing, for which she refused to engage because she did not have a UFT representative present on her behalf. Am. Compl. ¶ 28. Plaintiff does not state what a UFT representative is, or why she would not engage in the meeting without one. Principal Gabbard became "enraged" at Plaintiff, "demanded that [she] return immediately" and threatened to issue an unsatisfactory determination as her rating officer, even though Principal Gabbard was not, and did not become Plaintiff's rating officer, until February 2019. Am. Compl. ¶¶ 28, 39.[9] Principal Gabbard scheduled another disciplinary hearing with UFT representative Alice O'Neil present on October 22, 2018. Am. Compl. ¶ 33.

In the 2018-19 school year, Plaintiff spoke with at least one student via telephone in lieu of a home visit and documented her actions in an "ILOG report," but was reprimanded for not visiting in person. Am. Compl. ¶ 38. At the October 22, 2018 disciplinary hearing, Principal Gabbard referenced Plaintiff's ILOG entries, "contend[ing] that [Plaintiff] had not worked these days and that [Plaintiff] would not receive pay for them."[10] Am. Compl. ¶ 34. Principal Gabbard issued a disciplinary letter to Plaintiff, stating that she had not met her home visit quota and that she was insubordinate by refusing to purchase a metrocard. Am. Compl. ¶ 35. The following month, Plaintiff received a letter from a school regarding a home visit that she "did not complete as requested." Am. Compl. ¶ 37.

On October 13, 2018, Plaintiff emailed Mr. Friedman complaining about "the hostile and abusive environment Principal Gabbard had created through the way he treated and spoke to

---

[9] Plaintiff alleges there have been "several instances where Principal Gabbard has threatened to, or has issued disciplinary letters prior to 2019," even though he did not become her rating officer until February 2019. Am. Compl. ¶ 41.

[10] Plaintiff does not explain to what "these days" refers. Am. Compl. ¶ 34. Presumably, although not clearly pleaded, they relate to instances in which Plaintiff called students in lieu of making home visits.

[Plaintiff]." Am. Compl. ¶ 30. Plaintiff also indicated that "this continual maltreatment[,] aside from mental anguish, was taking a physical toll on [her] body." Am. Compl. ¶ 30. Plaintiff states that Principal Gabbard bullied and berated her in front of other employees, and on one occasion referred to Plaintiff's "extended years of service" in a derogatory way, but provides no context for that statement. (ECF 25 at 5).

In January 2019, Plaintiff received another disciplinary letter for an incident between Plaintiff and Mr. Friedman, for which Mr. Friedman cited "unprofessional conduct." Am. Compl. ¶ 40. In February 2019, Plaintiff was served with disciplinary charges under "Section 3020" seeking termination. Am. Compl. ¶ 42. Plaintiff does not allege that she was terminated.

### B.  Procedural History

On March 19, 2019, Plaintiff filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC").  Am. Compl. at 6. On July 1, 2019, Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") for age and disability discrimination. Am. Compl. ¶¶ 15-17, Am. Compl. Ex. 2. On September 10, 2019, The NYSDHR issued a Determination and Order after investigation, concluding that there is no probable cause to believe the Defendant were engaged in unlawful discriminatory behavior. (ECF 18-1). On December 26, 2019, the EEOC issued a Dismissal and Notice of Rights, "adopt[ing] the findings of the state . . . employment practices agency that investigated this charge," and advised Plaintiff of her right to file suit within 90 days of the receipt of the notice. *See* Am. Compl. Ex. 1.

On March 17, 2020, Plaintiff filed her complaint in this District, bringing suit against the DOE and Eric Friedman. (ECF 1-2). On August 11, 2020, Plaintiff amended her complaint, which

also dropped Mr. Friedman as a defendant.[11] *See* Am. Compl. Defendant moved to dismiss on

December 30, 2020. (ECF 17). Plaintiff filed her opposition on March 5, 2021. (ECF 25 (dated

February 11, 2021)). The DOE replied on March 26, 2021. (ECF 28). The District Court referred

the action to me for general pretrial management and dispositive motions. (ECF 23).

## II.  Some Claims Are Procedurally Barred

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept the

factual allegations set forth in the complaint as true and draw all reasonable inferences in favor

of the plaintiff. *See, e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). To survive such a

motion, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege enough facts to

show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

As relevant here, a court is "obligated to afford a special solicitude to *pro se*

litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). Therefore, this Court must

interpret Plaintiff's submissions "to raise the strongest arguments that they suggest." *Triestman*

*v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam). Nevertheless,

a *pro se* plaintiff must still plead sufficient facts to state a claim to survive a motion to dismiss.

---

[11] Under the ADEA, ADA and Rehabilitation Act, neither Mr. Friedman nor Principal Gabbard can be held individually liable. *See Bleichert v. New York State Educ. Dep't*, 793 F. App'x 32, 34 (2d Cir. 2019); *Jones v. Inter-County Imaging Ctrs.*, 889 F. Supp. 741, 745 (June 16, 1995); *Romand v. Zimmerman*, 881 F. Supp. 806 (N.D.N.Y. 1995).

*See Chukwueze v. NYCERS*, 891 F. Supp. 2d 443, 450 (S.D.N.Y. 2012); *see also, e.g.*, *Gresn v. McLaughlin*, 480 F. App'x 44, 46 (2d Cir. 2012) (summary order) ("*[P]ro se* complaints must contain sufficient factual allegations to meet the plausibility standard."). Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted). As mentioned, however, the Court may consider facts raised in opposition papers, depending on the circumstances. *Davila*, 343 F. Supp. 3d at 267. "However, the liberal treatment afforded to *pro se* litigants does not excuse a *pro se* party 'from compliance with relevant rules of procedural and substantive law.'" *Wang v. Palmisano*, 157 F. Supp. 3d at 317 (quoting *Maisonet v. Metro Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009)). In other words, the Court may not "invent factual allegations that a plaintiff has not pled." *Daly v. Westchester Cty. Bd. of Legislators*, No. 19-CV-4642 (PMH), 2021 WL 229672, at *4 (S.D.N.Y. Jan. 22, 2021) (alterations and quotations omitted) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).

### A. Plaintiff May Not Rely on Facts Prior to May 23, 2018, Except for Her Hostile Work Environment Claim

Generally, federal discrimination claims require a timely employment discrimination charge with the United States Equal Employment Opportunity Commission ("EEOC") or a state agency. *See, e.g.*, *Hodges v. Holder*, 547 F. App'x 6, 7 (2d Cir. 2013) ("As an initial matter, a plaintiff bringing claims under the ADA or the Rehabilitation Act . . . must exhaust certain administrative remedies before initiating suit in the district court."); *Zoulas v. New York Dep't of*

*Edu.*, 400 F. Supp. 3d 25, 49 (S.D.N.Y. 2019) (plaintiff in ADEA suit must bring EEOC complaint within 300 days of the allegedly unlawful practice). Where a plaintiff alleges discrete discriminatory or retaliatory acts, "such claims are not actionable if they occurred prior to the 300-day period even though they may be 'related to' acts that occurred within the permissible 300-day period." *Davis-Garett v. Urban Outfitter, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)).[12]

The 300-day limitation does not apply to hostile work environment claims. *Zoulas*, 400 F. Supp. 3d at 50. "[A]s long as any act contributing to the hostile work environment claim falls within the 300-day period, 'the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'" *Id.* (quoting *Morgan*, 536 U.S. at 117).

This 300-day rule impacts the claims Plaintiff may bring in this action. Plaintiff filed a Charge of Discrimination with the EEOC on March 19, 2019. (Am. Compl. at 6; *see also* Am. Compl. Ex. 1). Therefore, any discrete actions or retaliatory actions that occurred **prior to May 23, 2018**, 300 days before March 19, 2019, are time-barred. Therefore, Plaintiff's failure to accommodate and intentional discrimination claims may only be supported with facts alleged after May 23, 2018, but because of the exception for hostile work environment claims, Plaintiff's hostile work environment claim is not similarly cabined.

---

[12] There is a narrow exception in the continuing violation doctrine that provides that "when a plaintiff experiences a continuous practice and policy that violates his or her rights . . . the commencement of the statute of limitations period may be delayed until the last violation." *Zoulas*, 400 F. Supp. 3d at 49 (internal citations, alterations and quotations omitted). To be "continuing," the alleged actions must be conduct that occurs over a series of days or even years. *See id.* at 49-50. Generally, the continuing violation doctrine is heavily disfavored in the Second Circuit. *Trinidad v. New York City Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006).

### B.   The Court Lacks Subject Matter Jurisdiction Over Plaintiff's State Law Claims

The NYSHRL and NYCHRL allow for plaintiffs to bring: (1) an administrative action, "which is commenced with the [NYSDHR] or New York City Commission on Human Rights ("NYCCHR")"; or (2) "a judicial action, which can be commenced in any court of competent jurisdiction." *Marecheau v. Equal Emp't Practices Comm'n*, No. 13-CV-2440 (VEC), 2014 WL 5026142, at *4 (S.D.N.Y. Sept. 30, 2014) (citing N.Y. Exec. Law § 297(9); N.Y.C. Admin. Code § 8-502); *see also Williams v. City of New York*, 916 F. Supp. 2d 517, 520-21 (S.D.N.Y. 2013). In other words, a plaintiff can elect to pursue her claims in the NYSDHR *or* federal court, but not both. The bar is jurisdictional in that a "complaint that has previously been dismissed by the [NYSDHR] must be dismissed for lack of subject matter jurisdiction" under Rule 12(b)(1). *Bonilla v. City of New York*, No. 18-CV-12142 (KPF), 2019 WL 6050757 (S.D.N.Y. Nov. 15, 2019). Since Plaintiff pursued these claims in state court (Am. Compl. Ex. 2 (Verified Complaint in NYSDHR)), this Court lacks subject matter jurisdiction over Plaintiff's state law claims, and those claims should be dismissed with prejudice.

### III.   Remaining Employment Discrimination Claims

The Court broadly interprets Plaintiff's Amended Complaint as alleging five causes of action. *See* Am. Compl. at 4. Under the ADEA, she alleges age discrimination based on disparate treatment. Under the ADA and Rehabilitation Act, she alleges disability discrimination based on disparate treatment and failure to accommodate her disability. Under the ADEA, the ADA and the Rehabilitation Act, Plaintiff alleges retaliation, and a hostile work environment.

All of Plaintiff's claims—except for her hostile work environment claim—are subject to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973), which developed out of employment discrimination cases. *See, e.g.*, *Bey v. City of New York*, No. 20-CV-456, 2021 WL 2345249, at *5 (2d Cir. June 9, 2021) (ADA claims subject to *McDonnell Douglas*); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (ADEA claims subject to *McDonnell Douglas*); *Wein v. New York City Dep't of Educ.*, No. 18-CV-11141 (PAE), 2020 WL 4903997, at *17 (S.D.N.Y. Aug. 19, 2020) (ADA, Rehabilitation Act, ADEA retaliation claims subject to *McDonnell Douglas*); *Grant v. United Cerebral Palsy of New York City, Inc.*, No. 11-CV-18 (LGS), 2014 WL 902638, at *8 (S.D.N.Y. Mar. 7, 2014) (stating that hostile work environment claims not analyzed under *McDonnell Douglas*). Under the first step of the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. 411 U.S. at 802. The burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse action. *Id.* In pleading employment discrimination claims, the complaint needs to only give plausible support to a "minimal inference of discriminatory motivation." *Lopez v. New York City Dep't of Educ.*, No. 17-CV-9205 (RA), 2020 WL 4340947, at *7 (S.D.N.Y. July 28, 2020) (internal quotation marks omitted) (quoting *Littlejohn*, 795 F.3d at 311).

In making an employment discrimination claim, plaintiff must allege that she suffered an "adverse employment action," meaning an action that created a "materially adverse change in the terms and conditions of employment" giving rise to an inference of discrimination. *Noon v. Int'l Business Machines,* No. 12-CV-4544 (CM) (FM), 2013 WL 6504410, at *1 (S.D.N.Y. Dec. 11, 2013) (internal quotations omitted) (quoting *Behringer v. Lavelle Sch. for Blind*, No. 08-CV-4899 (JGK), 2010 WL 5158644, at *15 (S.D.N.Y. Dec 17, 2010)). This includes, but is not limited to, "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand."

14

*Lovejoy–Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 223 (2d Cir. 2001) (quoting *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999). Plaintiff can demonstrate an inference of discrimination several ways, including allegations of preferential treatment given to similarly situated individuals, and remarks that convey discriminatory animus. *Mabry v. Neighborhood Def. Serv.*, 769 F. Supp. 2d 381, 392 (S.D.N.Y. 2011). While facts about comparators are not always necessary, a plaintiff must plead "sufficient facts to make plausible the conclusion that but for [her] age, [she] would not have suffered the challenged action." *Williams v. Addie Mae Collins Cmty. Serv.*, No. 11-CV-2256, 2012 WL 4471544, at *3 (S.D.N.Y. Sept. 27, 2012) (internal quotation marks, alteration, and citation omitted).

Plaintiff alleges seven adverse employment actions taken because of Defendant's age and/or disability: (1) the "revocation" of Plaintiff's car privileges, or alternatively, refusal to reimburse for car usage (Am. Compl. ¶¶ 31, 5; ECF 25 at 2); (2) a hostile work environment (Am. Compl. ¶¶ 30, 17); (3) reassignment to a school with additional travel time (Am. Compl. ¶ 11); (4) additional restrictions and obligations (Am. Compl. ¶ 12); (5) reassignment from her teaching duties (Am. Compl. ¶ 42); (6) being served with Section 3020-a disciplinary charges seeking termination of her employment on February 1, 2019 (Am. Compl. ¶ 42); and (7) required additional walking to attend meetings and sign forms. (ECF 25 at 4). Allegations (3) and (4), the reassignment of schools; and the additional restrictions and obligations, are time barred having occurred prior to May 23, 2018. Even if the Court were to interpret Plaintiff's allegations of disparate treatment under a continuing violation analysis, the claims would still fail. In an abundance of caution, I still consider the time-barred allegations in my analysis below.

15

### C.  Age Discrimination Claims

The ADEA prohibits employers from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); *Bernheim v. New York City Dep't of Educ.*, No. 19-CV-9723 (VEC) (JLC), 2021 WL 2619706, at *6 (S.D.N.Y. June 25, 2021). To successfully claim age discrimination under the ADEA, Plaintiff must allege that: (1) she "was within the protected age group"; (2) she "was qualified for the position"; (3) she "experienced [an] adverse employment action"; and (4) "such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski*, 596 F.3d at 107.

There is no dispute that Plaintiff, who was in her late 60s during the events in question, was a member of a protected class. *See* 29 U.S.C. § 631(a). However, even assuming Plaintiff is qualified for her position, she either does not plead: (1) how these experiences amount to material adverse changes to the terms and conditions of her employment; or (2) how any of the alleged adverse employment actions give rise to an inference of discrimination.

For all but Plaintiff's hostile work environment and 3020-a disciplinary charge allegations, Plaintiff does not plead how these events were material adverse changes to her work conditions.[13] Simply put, Plaintiff does not state how any of these changes made her work *significantly* worse. *See Ward v. Shaddock*, No. 14-CV-7660, 2016 WL 4371752, at *5 (S.D.N.Y. Aug. 11, 2016) (dismissing discrimination claims where Plaintiff was given "menial tasks . . .

---

[13] Plaintiff being served with Section 3020-a charges constitutes an adverse employment action in this Court. *See Siclari v. New York City Dep't of Educ.*, No. 19-CV-7611 (AJN), 2020 WL 7028870, at *7 (S.D.N.Y. Nov. 30, 2020) (citing *Lopez*, 2020 WL 4340947, at *7. A hostile work environment also constitutes an adverse employment action, *see Noon v. Int'l Business Machines,* No. 12 Civ. 4544(CM)(FM), 2013 WL 6504410, at *1 (S.D.N.Y. Dec. 11, 2013), but as discussed *infra*, Plaintiff does not adequately plead a hostile work environment. *See infra* Section III.F.

normally given to lower-grade employees" because alleged adverse employment actions amounted to "mere inconvenience") (internal citations omitted); *Siclari v. New York City Dep't of Educ.*, No. 19-CV-7611 (AJN), 2020 WL 7028870, at *7 (S.D.N.Y. Nov. 30, 2020) (finding plaintiff failed to allege certain adverse employment actions because plaintiff's claims were "lacking in detail" and conclusory); *see also Ticali v. Roman Catholic Diocese of Brooklyn,* 41 F. Supp. 2d 249, 265 (E.D.N.Y. 1999) (teacher's transfer from first grade to kindergarten was not an adverse employment action because there was "no material evidence that her transfer obliged her to perform tasks that were less appropriate for her skills than her prior position or adverse to her in any other legally cognizable way").

To plead an inference of discrimination, a plaintiff may allege remarks that convey discriminatory animus or allegations of preferential treatment given to similarly situated individuals. *Mabry*, 769 F. Supp. 2d at 392. In determining whether a remark is probative of discriminatory intent, courts consider four factors: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the allegedly adverse employment decision at issue; (3) the content of the remark . . . ; and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)). *See Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010); *see also Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 438 (S.D.N.Y. 2015) (applying this standard at the motion to dismiss phase).

Plaintiff's claims also fail because she does not allege that Defendant treated her poorly *because of* her age (or disability). To the extent that Plaintiff alleges that Defendant expressed discriminatory animus because of two comments (one by Mr. Friedman and one by Principal

17

Gabbard) over the span of two or three years, she fails. Plaintiff alleges that during a

professional development workshop, Mr. Friedman "scream[ed]" at her, called her "old," and

threatened to take away her license, but does not allege any context around the incident. Am.

Compl. ¶ 7. Plaintiff further alleges that Principal Gabbard "referred to her 'extended years of

service' in a derogatory way" when "berat[ing] her in front of several staff members." (ECF 25

at 5). Although these statements were both made by supervisors, Plaintiff fails to plead context

necessary to determine whether they are *discriminatory* statements, including, for example: (1)

what Principal Gabbard's statement even was, (2) when the statements were made; (3) what, if

anything, led up to the statements; and (4) whether these statements were either temporally

or substantively related to any adverse employment action. Without context, the two

statements are—combined—not detailed enough for Plaintiff to allege an inference of

discrimination.[14] *See Alfano v. Costello,* 294 F.3d 365, 377 (2d Cir. 2002) ("[M]any bosses are

harsh, unjust, and rude. It is therefore important . . . to exclude from consideration personnel

decisions that lack a linkage or correlation to the claimed ground of discrimination. Otherwise,

the federal courts will become a court of personnel appeals."); *cf. Siano v. Haber*, 40 F. Supp. 2d

516, 524 (S.D.N.Y. 1999) (dismissing discrimination claim where a supervisor's question, "Is she

tired yet?" was derogatory, but not "discriminatory"); *Piasecki v. Daughters of Jacob Nursing*

---

[14] An employee is a "Supervisor" for purposes of vicarious liability under the ADEA if he "is empowered by the employer to take tangible employment actions against the victim . . . i.e., to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Vance v. Ball State Univ.,* 570 U.S. 421, 431 (2013) (quoting *Burlington Indus. v. Ellerth,* 524 U.S. 742, 761 (1998); *Preuss v. Kolmar Lab'ys, Inc.,* 970 F. Supp. 2d 171, 186 (S.D.N.Y. 2013) (applying this definition under the ADEA).

*Home, Inc.*, 808 F. Supp. 1136, 1138 (S.D.N.Y. 1992) (finding an inference of discrimination where administrators asked plaintiff whether he intended to die on the job; repeatedly asked when he planned to retire); *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456 (2d. Cir. 2001) (finding discriminatory animus where a decision-making manager "made numerous comments about the age of the [employees], referring to them as 'contaminated' and 'Bad Apples,' and finding that the employer exhibited an "all-consuming interest in the age and projected retirement rates of the [employees]").

Plaintiff also does not adequately allege that Defendant gave preferential treatment to similarly situated individuals. Where, as here, the operative pleading does not plead any direct evidence of discriminatory intent, a plaintiff can raise an inference of discrimination by demonstrating the disparate treatment of at least one similarly situated employee outside her protected group, and sufficient facts from which it may be reasonably inferred that "the plaintiff's and comparator's circumstances . . . bear a reasonably close resemblance." *Hu v. City of New York*, 927 F.3d 81, 96-97 (2d. Cir. 2019). At the pleading stage, "a complaint generally must identify the similarly situated employees with some specificity" where the theory of discrimination is based on comparison. *Lopez*, 2020 WL 4340947, at *9 (quoting *Hausdorf v. N.Y.C. Dep't of Educ.*, No. 17-CV-2155 (PAE) (SN), 2018 WL 1871945, at *7 (S.D.N.Y. Jan. 25, 2018). While Plaintiff occasionally references what happened to "younger attendance teachers" (Am. Compl. ¶ 5) or other senior staff members (Am. Compl. ¶ 12), Plaintiff does not allege discrimination by comparison. Plaintiff's few comparisons to other teachers, without specifying their names, ages, positions, or any other details about them, fail to "make plausible the conclusion that 'but for' her age," Defendant would not have "revok[ed]" her car privileges.

*See Payne v. Malemathew*, No. 09-CV-1634 (CS), 2011 WL 3043920, at *2 (S.D.N.Y. July 22, 2011) (alterations and citations omitted); Am. Compl. ¶ 5. Accordingly, Plaintiff's age discrimination claims should be dismissed.

### D. Disability Claims

To state a claim for disability discrimination under the ADA or the RA, a plaintiff must allege that (1) the defendant-employer is subject to the ADA; (2) the plaintiff was disabled under the ADA; (3) she was qualified to perform the essential functions of her job, with or without a reasonable accommodation; and (4) she suffered an adverse employment action under circumstances giving rise to an inference of disability discrimination. *See Amador v. Macy's E.-Herald Square*, No. 12-CV-4884 (MHD), 2014 WL 5059799, at *9 (S.D.N.Y. Oct. 3, 2014); *see Natofsky v. City of New York*, 921 F.3d 337, 345 (2d Cir. 2019), *cert. denied*, 206 L. Ed. 2d 822 (Apr. 20, 2020) (holding that the causation standard for Rehabilitation Act is the same as ADA). "A plaintiff can meet that burden through direct evidence of intent to discriminate . . . or by indirectly showing circumstances giving rise to an inference of discrimination." *Vega v. Hempstead Union Free Sch. Distr.*, 801 F.3d 72, 87 (2d Cir. 2015).

Plaintiff adequately pleads that she is a person with a disability within the meaning of the ADA. A person has a "disability" within the meaning of the ADA if he has "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment;" or if he is (C) "regarded as having such an impairment." 42 U.S.C. § 12102(1). "Major life activities" are defined in the regulations as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working," 29 C.F.R. § 1630.2(i).

Plaintiff states that her disability is because of an injury and subsequent "knee replacement surgery in 2013." *See, e.g.*, Am. Compl. ¶¶ 3. She states that her disability "impair[s] her ability to perform the major life activity of walking, particularly up and down stairs." (ECF 25 at 2). This Court has found that climbing stairs qualifies as a major life activity within the meaning of the ADA. *See Nodelman v. Guner & Jahr USA Pub.*, No. 98-CV-1231 (LMM), 2000 WL 502858, at *7 (S.D.N.Y. Apr. 26, 2000); *Sussle v. Sirina Prot. Sys. Corp.*, 269 F. Supp. 2d 285, 299 (S.D.N.Y. June 10, 2003). Plaintiff also adequately pleads that her employer was covered by the ADA. *See* ECF 25 ("The Rehabilitation Act of 1973, Sec. 504 prohibits employees who receive federal funding from discriminating against a person with disabilities. In this case, Plaintiff has alleged that Mr. Friedman, the supervisor of the Manhattan Attendance Teachers working at Affinity school, failed to accommodate her disability . . . ."); *Liparulo v. Onondaga Cent. Sch. Dist.*, No. 5:06-CV-1068 (GTS) (GHL), 2009 WL 3790187, at *7 (N.D.N.Y. Nov. 12, 2009) ("[T]here is no dispute that the School is an ADA-covered employer.").

Plaintiff fails, however, in alleging that she was qualified to perform the essential functions of her job with or without reasonable accommodations. Although Plaintiff has worked as an attendance teacher since 2001, Plaintiff does not allege any facts that she is currently qualified for her position. "Whether the employee is 'otherwise qualified' as of the date of an adverse action is *forward-looking* and enables the employer to consider how the employee will perform as compared to non-disabled individuals." *Messer v. Bd. Of Educ. Of City of New York*, No. 01-CV-6129 (JFB) (CLP), 2007 WL 136027, at *11 (E.D.N.Y. Jan. 16, 2007) (dismissing discrimination case where Plaintiff did not allege that he was qualified for the job since his injury); *Shannon v. N.Y.C. Transit Auth.*, 322 F.3d 95, 100 (2d Cir. 2003) (holding that where a

bus driver previously passed vision tests, but was later found to be color-blind, he was not "otherwise qualified" to perform the essential functions of the job). While Plaintiff very well may be qualified to do her job with a reasonable accommodation, Plaintiff has not alleged that to be so. Specifically, Plaintiff does not plead any facts as to how or whether she was able to complete her job since the onset of her disability in 2013 through 2016, when she alleges that she began experiencing discrimination.

Even if Plaintiff adequately alleged that she was qualified for her position with a reasonable accommodation, Plaintiff neither alleges that any of the seven adverse employment actions she alleges: (1) are materially adverse changes to her employment,[15] or (2) give rise to an inference of disability discrimination.[16] Just as under an age discrimination analysis, where Plaintiff does not allege direct discrimination, she may raise an inference of discrimination by alleging actions or remarks made by her employer that clearly reveal a discriminatory animus, or by showing that similarly situated employees received preferential treatment. *See Vega v. Dep't of Educ.*, No. 18-CV-6221 (ER), 2020 WL 1505564, at *7 (S.D.N.Y. Mar. 30, 2020). Here, Plaintiff has (again) done neither. While Plaintiff makes vague reference to non-disabled

---

[15] I analyzed whether Plaintiff's alleged adverse employment actions are severe enough to be material adverse changes to her employment in Section III.C.; the same analysis applies here.

[16] Notably, a failure to accommodate "is not in and of itself an adverse employment action." *Ragin v. E. Ramapo Centr. Sch. Dist.*, No. 05-CV-6496 (PGG), 2010 WL 1326779, at *20 (S.D.N.Y. Mar. 31, 2010). Moreover, a "plaintiff must show that defendants had notice of her disability . . . [and] has the initial duty to inform the [defendant] of a disability before ADA liability may be triggered for failure to provide accommodations." *Thompson v. City of New York*, No. 98-CV-4725 (GBD), 2002 WL 31760219, at *7 (S.D.N.Y. Dec. 9, 2002) (internal quotations omitted) (quoting *Beck v. Univ. Of Wisconsin Bd. Of Regents*, 75 F.3d 1130, 1134 (7th Cir. 1996); *Castillo v. Hudson Theatre, LLC*, 412 F. Supp. 3d 447, 451 (S.D.N.Y. 2019). Plaintiff does not adequately allege that she informed Defendant of her disability where she states that Mr. Friedman was aware of her disability because he had access to her employment file, which included information about the injury that caused her disability. (ECF 25 at 3). Where Plaintiff alleges that she told Mr. Friedman that she could not walk up and down the stairs, she fails to allege when this happened for purposes of Defendant being on notice about her disability. (ECF 25 at 4).

individuals, Plaintiff fails to identify any comparators whose treatment by Defendant would support an inference of disability discrimination. *See* ECF 25 at 1 ("[Mr. Friedman] deliberately put her in situations where her disability made it more difficult for her to do her job than for someone without her disability."); *DePrima v. N.Y.C. Dep't of Educ.,* No. 12-CV-3626 (MKB), 2014 WL 1155282, at *6 (E.D.N.Y. Mar. 20, 2014)) (holding that plaintiff failed to identify any similarly situated comparators where she alleged that she was terminated for generating negative media coverage when "a vast majority of other tenured teachers" would not have been terminated for the same conduct); *Abel v. NYC Human Resources Admin.*, No. 10-CV-0295 (BSJ) (FM), 2011 WL 812309, at *5 (S.D.N.Y. Mar. 3, 2011) (noting the Court would dismiss these ADA claims because plaintiff failed to identify any non-disabled comparators); *Fox v. State Univ. of New York,* 686 F. Supp. 2d 225, 230 (E.D.N.Y. 2010) (dismissing disability discrimination claim where plaintiff failed to name any similarly situated non-disabled comparators who were treated differently). Plaintiff did not point to any one specific comparator and failed to plead any facts showing such an individual was similarly situated to the plaintiff in "all material respects." *C.f. Novick v. Vill. of Wappingers Falls, New York*, 376 F. Supp. 3d 318, 343 (S.D.N.Y. 2019) (finding plaintiff adequately identified non-disabled comparators).

### E.   Retaliation under the ADA, the Rehabilitation Act, and the ADEA

To state a claim for retaliation, a plaintiff must allege that "(1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Zoulas*, 400 F. Supp. 3d at 56–57 (S.D.N.Y. 2019) (internal alterations

omitted) (quoting *Klein v. Brookhaven Health Care Facility*, No. 17-CV-4841 (JSA) (KT), 2019 WL 1459258, at *7 (E.D.N.Y. Mar. 11, 2019)).

Here, Plaintiff fails to state a claim. While Plaintiff adequately alleges that she engaged in protected activity (filing a discrimination complaint with the OEO) of which Defendant were aware (Am. Compl. at ¶ 10), Plaintiff has not adequately pleaded that any of the alleged adverse employment actions were: (1) material changes to her employment that (2) give rise to an inference of age or disability discrimination. *See supra* Sections IV.A.–B. Accordingly, Plaintiff's claims for retaliation should be dismissed.

### F. Hostile Work environment under the ADEA, ADA and Rehabilitation Act

As this Circuit has explained, "where [multiple] bases of discrimination exist, the [multiple] grounds cannot be neatly reduced to distinct components." *Gorzynski*, 596 F.3d at 109–10 (2d Cir. 2010); *see also Lam v. Univ. of Haw.,* 40 F.3d 1551, 1562 (9th Cir. 1994) (acknowledging that "the attempt to bisect a person's identity at the intersection of race and gender often distorts or ignores the particular nature of their experiences," including stereotypes and assumptions not shared by all individuals of that race or gender).

To establish a hostile work environment claim under the ADEA, a plaintiff must allege facts that the complained of conduct: "(1) is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected characteristic].'" *Forgione v. City of New York*, 2012 WL 4049832, at *7 (E.D.N.Y. Sept. 13, 2012) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (alterations in original)). A workplace is hostile "[when] [it] is

permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Id.* at *7 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Sporadic, minor acts or occasional episodes do not rise to the level of a hostile work environment. *See id.* An inquiry into whether a work environment is hostile requires evaluating "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with a plaintiff's job performance." *Harewood v. New York City Dep't of Educ.*, No. 18-CV-05487 (KPF) (KHP), 2019 WL 3042486, at *4 (S.D.N.Y. May 8, 2019).

Plaintiff here alleges that she experienced a "hostile and abusive" environment primarily because of interactions with Mr. Friedman and Principal Gabbard. Plaintiff alleges that she suffered "multiple incidents" in which Mr. Friedman "verbally assaulted and publicly humiliated her," (Am. Compl. ¶ 6), and experienced "continual verbal harassment" by Mr. Friedman and those "closely associated with him." Am. Compl. ¶ 17. Plaintiff further alleges that she experienced a hostile work environment because of the way Principal Gabbard had "treated and spoke to [her]," (Am. Compl. ¶ 30), including one incident in which Principal Gabbard referred to Plaintiff's "extended years of service" in a derogatory way. (ECF 25 at 5). In connection with Mr. Friedman's and Principal Gabbard's harassment, Plaintiff was given or was threatened with multiple unsatisfactory ratings. Am. Compl. ¶¶ 9, 24, 28, 41.

To allege a hostile work environment, Plaintiff must link the abusive behavior to her protected characteristic, which she fails to do here. *See Carter v. Verizon*, No. 13-CV-7579 (KPF), 2015 WL 247344, at *6 (S.D.N.Y. Jan. 20, 2015) (dismissing hostile work environment claims where the plaintiff "does not connect any action by any supervisor . . . to his gender or age").

Regarding Plaintiff's general claims of harassment by Mr. Friedman and those close to him, she does not allege that Mr. Friedman routinely mistreated Plaintiff *because of* her protected characteristics. Further, Plaintiff only identifies two incidents in which a supervisor made negative references to her protected status (age). *See* Am. Compl. ¶ 7; ECF 25 at 5. Even in connection with Plaintiff's other pleaded facts, the circumstances that Plaintiff alleges are not severe enough for her to adequately plead a hostile work environment. *See Chukwueze v. NYCERS,* 891 F. Supp. 2d 443 (S.D.N.Y. 2012) (granting motion to dismiss where plaintiff alleged three incidents over the course of a year where he was chastised and berated in front of his coworkers); *Smith v. Reg'l Plan Ass'n, Inc.,* No. 10-CV-5857 (BSJ) (KNF), 2011 WL 4801522, at *6 (S.D.N.Y. Oct. 7, 2011) (granting motion to dismiss where disabled plaintiff alleged six incidents of discriminatory treatment, such as being called "crippled" and a "lame duck"); *Kelly v. North Shore-Long Island Health Sys.*, No. 13-CV-1284 (JS) (WDW), 2014 WL 2863020 at *2, 2014 U.S. Dist. LEXIS 85447, at *26 (E.D.N.Y. June 22, 2014) (dismissing ADA hostile work environment claims where the defendant called plaintiff "a threat to the public"; (2) placed her on administrative leave indefinitely; and (3) sent her accusatory and threatening letters warning her that if she contacted her case managers regarding her employment status, further action against would be taken because "isolated, minor acts or occasional episodes do not warrant relief under a hostile environment theory") (citations omitted); *c.f. Zoulas*, 400 F. Supp. 3d at 59–60 (S.D.N.Y. 2019) (finding plaintiff pleaded a claim for hostile work environment where the "complaint describes numerous specific, concerted, and continuous allegations of harassment and ridicule based on her age over the course of multiple years.").

To the extent Plaintiff alleges that her multiple negative reviews created a hostile work environment, courts in this Circuit have consistently held that "[a]llegations of even constant reprimands and work criticism by themselves are not sufficient to establish a hostile environment claim." *Lucenti v. Potter*, 432 F. Supp. 2d 347, 362 (S.D.N.Y. 2006); *St. Louis v. N.Y.C. Health & Hosp. Corp.*, 682 F. Supp. 2d 216, 234 (E.D.N.Y. 2010) (same, concerning "negative job evaluations and disciplinary warnings"). Therefore, Plaintiff has not stated a claim for hostile work environment and her claim should be dismissed.

**IV. Leave to Amend**

*Pro se* complaints should generally be given leave to amend when there is "any indication that a valid claim might be stated," *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002), though amendment may be denied upon a finding of futility. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, I recommend that Plaintiff be granted leave to amend her complaint to detail her claims. In her Amended Complaint, Plaintiff should provide all relevant facts supporting her claims against the Defendant. To the greatest extent possible, Plaintiff's amended complaint should allege:

1. How Plaintiff is qualified for her position after 2013, either with or without a reasonable accommodation;

2. The circumstances of Plaintiff's communications with her employer informing them of her disability;

3. The accommodation(s) Plaintiff requested and received, if any, during her tenure at DOE;

4. The circumstances of retaliatory acts, if any, by Mr. Friedman, Principal Gabbard, or anyone else;

5. The specifics of any comparators who Plaintiff alleges were treated favorably, to the extent Plaintiff seeks to allege disparate treatment by comparison.

### V.  Conclusion and Objections

For the reasons stated above, I recommend that the Motion be **GRANTED**, with leave to amend. In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days (including weekends and holidays) from receipt of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). A party may respond to any objections within fourteen (14) days after being served. Such objections, and any responses to objections, shall be addressed to the Hon. Valerie E. Caproni. Any requests for an extension of time for filing objections must be directed to Judge Caproni. If Plaintiff wishes to review, but does not have access to, cases cited herein that are reported on Westlaw, he should request copies from Defendant. *See Lebron v. Sanders*, 557 F.3d 76, 79 (2d Cir. 2009).

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS <u>WILL</u> RESULT IN A WAIVER OF OBJECTIONS AND <u>WILL</u> PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

The Clerk of Court is respectfully directed to mail a copy of this Report and

Recommendation to the *pro se* Plaintiff.

Respectfully submitted,

*s/  Ona T. Wang*

Dated: August 31, 2021                                              **Ona T. Wang**
     New York, New York                         United States Magistrate Judge