NAVIBROC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   MARY HURD. BROWN,

 4                  Plaintiff,

 5          v.                          20 Civ. 2424 (JLC)(OTW)

 6   NEW YORK CITY DEPARTMENT OF
     EDUCATION,
 7                                      Conference

 8                  Defendant.

 9   ------------------------------x
                                        New York, N.Y.
10                                      October 31, 2023
                                        11:15 a.m.
11
     Before:
12
                         HON. ONA T. WANG,
13
                                        U.S. Magistrate  Judge
14
                            APPEARANCES
15

16   MARY HURD BROWN, Pro Se Plaintiff

17   CORPORATION COUNSEL, LABOR AND EMPLOYMENT DIVISION
          Attorney for Defendant
18   BY:  ZACHARY ELLIS

19

20

21

22

23

24

25
```

NAVIBROC

1          (Case called)

2          MS. HURD BROWN:  My name is Mary Hurd Brown.

3          DEPUTY CLERK:  Thank you.  Counsel, your appearance.

4          MR. ELLIS:  Zachary Ellis for the City.

5          DEPUTY CLERK:  Thank you.

6          THE COURT:  All right.  We are here for a discovery

7    status conference.  I have created my own agenda.  And, so

8    let's take those in order and we will try to get through some

9    of the open issues.  All right.  So, I extended the fact

10   discovery deadline to today so that we could have this

11   conversation.  I fully expect that we will extend it some

12   additional time, but I am really in a position now to try to

13   understand what else is left, how much time we realistically

14   need to get these closed out, and then I will set another fact

15   discovery deadline.

16          One of the first issues, is I believe -- I believe

17   this might have been or was supposed to have been addressed in

18   ECF89 -- is emails that refer to emails between Eric Freidman

19   and Principal Gabbard discussing the denial of the car

20   accommodation.

21          Mr. Ellis, do you want to talk to me about that?

22          MR. ELLIS:  Yes, your Honor.  We have finalized an

23   initial review population of 752 documents which must be

24   reviewed by myself one at a time and then sent to a third-party

25   vendor, relativity, to be ready for production.  I anticipate

NAVIBROC

1    making that production by next week for Ms. Brown.

2            THE COURT:  752 emails you said?

3            MS. HURD BROWN:  They are emails and attachments to

4    emails.  In total 752 unique documents.

5            THE COURT:  OK.  Can you, in the interest of moving

6    this along and trying to stave off additional discovery

7    disputes, review for privilege and then produce the rest?  I

8    mean 752 emails is not a whole lot out of, you know,

9    considering many of the cases that I see.

10           MS. HURD BROWN:  It is not, your Honor.  We will get

11   that production to Ms. Hurd Brown within a week.

12           THE COURT:  OK.  So, you will get the production in a

13   week.  All right.  I will say November 10, which is a week from

14   Friday; OK?

15           MR. ELLIS:  Yes, your Honor.

16           THE COURT:  Ms. Brown, I think that takes care of the

17   first issue.  You should expect them by November 10.  The next

18   issue I see is something about the complete medical file

19   regarding a possible health crisis and Ms. Brown's presence at

20   a particular 9, 2021 3020 hearing session.  What is it that you

21   are looking for?  Is it your medical file with the DEO or is it

22   specific to an event?

23           MR. ELLIS:  OK.  Well, it is a whole bunch.

24           THE COURT:  Ms. Brown, I really don't like it if you

25   go, it is a whole bunch.  Let's try to talk about each issue.

1          MS. HURD BROWN:  I am going to do that because I have

2     been assisting Mr. Ellis to get my medical files because

3     evidently The Board of Ed can't seem to produce any files where

4     any of the doctors notes, letters, that should be contained in

5     those files I have not gotten one medical file with any of the

6     letters that would have been in my medical file.  And that's

7     the problem.

8          THE COURT:  Now, my question is, are you using this

9     to -- you need these documents to show your disability; is that

10    right?

11         MS. HURD BROWN:  Yes.

12         THE COURT:  All right.

13         So, let's ask Mr. Ellis, what is up with that?  I

14    think, broadly, right, medical files from DEO showing, I guess,

15    DOE's knowledge of Ms. Hurd Brown's disability.

16         MR. ELLIS:  Yes, your Honor.  I have produced

17    Ms. Hurd Brown's full file with the DOE's office medical leaves

18    and records administration which is what we would refer to

19    colloquially as her medical file.  To the extent that

20    Ms. Hurd Brown believes there are records that should have been

21    in that file but that are not, there is no other medical file

22    of hers, of which I am aware of, that the DEO would be in

23    possession of.

24         THE COURT:  OK.  So, Ms. Hurd Brown, I think what I am

25    hearing is that the medical file that the Department of

NAVIBROC

1    Education keeps, right, the full medical needs and records

2    administration file that Mr. Ellis, you know, got and produced

3    to you, you believe is not complete.  But what the city is

4    representing is that's what they have.  Is that what the

5    dispute seems to be?

6              MS. HURD BROWN:  Yes, that is what the dispute is,

7    your Honor.  May I add --

8              THE COURT:  Why is it and what it is that you think

9    this medical file should have that isn't in there?

10             MS. HURD BROWN:  OK.  There are no letters from the

11   orthopedic doctor.  I think the best way I have tried to deal

12   with it to assist Mr. Ellis and the DOE to get these, as I have

13   requested that the medical records be mailed to him.  But --

14             THE COURT:  The medical records be mailed to whom?

15             MS. HURD BROWN:  Mr. Ellis.

16             THE COURT:  OK.

17             MR. ELLIS:  I can have the Court --

18             THE COURT:  Wait, wait.  You're saying there are no

19   letters from the orthopedic doctor to your employer in the

20   medical file.  Is that what you are saying?

21             MS. HURD BROWN:  Yes, there is none.

22             THE COURT:  And you believe that there were letters

23   that were sent?

24             MS. HURD BROWN:  Yes.  As a matter of fact at my

25   deposition with Mr. Ellis, and it is on record, I was able to

NAVIBROC

1    read one of those letters from my orthopedic surgeon doctor

2    into the record because none of them appear, and we are

3    starting back from -- we actually have letters from 1995

4    listing accommodations and things like that.  Also, it would

5    have been part of the Workmans' Compensation case which the

6    Board of Ed again has not produced all the records.  So, what I

7    have done is I have reached out to New York Columbia

8    Presbyterian Hospital and asked them to send all of the medical

9    records that they have for the surgeries of the knee

10   replacement and the shoulder replacement.  So, that should be

11   arriving to Mr. Ellis.  I have also taken upon myself to reach

12   out to New York Langone to also get those operating reports for

13   him.  So, that should be -- I just got an email yesterday

14   saying that should be completed.  So, those are all being

15   forwarded to him.  I also provided him with the HIPAA form for

16   my orthopedic doctor.  He said the address was wrong, but we

17   checked that, and I sent him another one.  I have also given

18   him my mental HIPAA for Upper Manhattan Health Center.

19             THE COURT:  OK.  Let me.

20             MS. HURD BROWN:  I am trying to hip him.

21             THE COURT:  What was the HIPAA release for the

22   orthopedic?

23             MS. HURD BROWN:  Dr. Fernandez Madrid at 240 East

24   118th Street.  Did you get the upper Manhattan?

25             THE COURT:  Upper Manhattan Health Center.

NAVIBROC

1          MS. HURD BROWN:  Yes.  That is the medical records,

2     the mental records.  I have also sent to New York Langone

3     orthopedic hospital at 30 East 17th Street to have that file

4     sent to him.

5          THE COURT:  OK.  What is the New York Langone records?

6          MS. HURD BROWN:  Those would be the surgeries.

7          THE COURT:  Oh.  You had more surgeries there?

8          MS. HURD BROWN:  Yes.  I have had two knee

9     replacements in 2013 and I had a shoulder replacement in 2020.

10    Those operating reports are coming to him under Dr. Madrid was

11    the surgeon.

12         THE COURT:  That is in addition to the knee and

13    shoulder replacements that you reached out to Columbia

14    Presbyterian for?

15         MS. HURD BROWN:  Columbia Presbyterian is the result

16    of the March 9 incident and the medical crisis that developed.

17    So, that is why those records are pertinent, because it

18    reflects my accommodations and my disability.  So, that is why

19    those records are going to them as well.

20         THE COURT:  OK.  So, when you say so New York Columbia

21    Presbyterian medical records should really be about the

22    March 9, 2021 incident?

23         MS. HURD BROWN:  That is the lead to that.  That is

24    part of the whole.  You have to understand, Judge,

25    accommodations were taken away from my disability.

1          THE COURT:  I know that is what you are saying your

2     case is about.  I am just trying to understand what medical

3     records you are getting for which place and what they were for.

4          MS. HURD BROWN:  Right.

5          THE COURT:  Because when I first heard you talking, I

6     thought you said New York Columbia Presbyterian was for your

7     fee knee and shoulder replacements.

8          MS. HURD BROWN:  No, I'm sorry.  I misspoke.

9          THE COURT:  So, Columbia Presbyterian is the March 9,

10    2021 incident and, as you put it, the medical crisis that

11    developed.

12         MS. HURD BROWN:  Yes, ma'am.

13         THE COURT:  Then for NYU Langone it was two knee

14    replacements in 2013 and a shoulder replacement in 2020.

15         MS. HURD BROWN:  Yes, ma'am.

16         THE COURT:  OK.  Then you provided a HIPAA release for

17    Dr. Fernandez Madrid who did those surgeries at NYU Langone.

18         MS. HURD BROWN:  Yes, ma'am.

19         THE COURT:  Then you have a mental health HIPAA for

20    Upper Manhattan Health Center.

21         MS. HURD BROWN:  Yes.

22         THE COURT:  Are there more medical records you are

23    still trying to get?

24         MS. HURD BROWN:  Well, I can only put it on record,

25    the Blanton-Peale Institute that I was under medical for

NAVIBROC

1    mental.

2              THE COURT:  Can you spell that please?

3              MS. HURD BROWN:  B-L-A-N-T-O-N P-E-A-L-E Institute.

4    They are located at 7 West 30th Street, ninth floor.  Now,

5    those records, from my understanding, should already be with

6    the DOE.  I have evidence and, I can give a copy to Mr. Ellis,

7    from Lorene Hayes, the Board of Ed director of the medical

8    leave and record office in 65 Court Street that she requested

9    the files on November 10, 2018.

10             So, as far as I am concerned, those mental records

11   should be in their possession?

12             THE COURT:  OK.  So, those are the medical records.

13   That is roughly the universe of the relevant medical records.

14             MS. HURD BROWN:  That is all I could assist him with.

15   Also, I gave him a HIPAA for the World Trade Center where I

16   have been diagnosed with PTSD and asthma as a result of 9-1-1.

17   That was also given to him.

18             THE COURT:  That is the World Trade Center health

19   registry?

20             MS. HURD BROWN:  Yes.  I am a member of that.

21             THE COURT:  I am a member too.

22             MS. HURD BROWN:  So, I have a medical for life from

23   them because of the PTSD and the asthma that was sustained

24   during that period.

25             THE COURT:  Uh-huh.  OK.

NAVIBROC

1          MS. HURD BROWN:  So, he has a HIPAA also to execute

2     for that as well.

3          THE COURT:  All right.

4          MS. HURD BROWN:  I think that is everything I can

5     think of that would assist him.

6          THE COURT:  OK.  So, Mr. Ellis, did you have that list

7     before?  Are there new ones in here?  How long do you think it

8     might take?

9          MR. ELLIS:  Yes, your Honor.  I can tell you that if a

10    medical record does not appear in Ms. Hurd Brown's file with

11    the DOE medical release and records administration office nor

12    is it in any of her personnel files, I am not really certain of

13    any other DOE-kept folder or location that I could check for

14    such records.  With respect to Ms. Hurd Brown's HIPAA

15    authorizations, my office, the Law Department, did attempt to

16    execute all of the HIPAA forms which she had sent to us save

17    for one, which she sent much more recently, which I will

18    execute as soon as I get back to the office.  Two of those

19    HIPAA authorizations including the one for Fernandez Madrid

20    were returned as unexecuted.  Madrid's because his office had

21    changed.  The other with you was just returned by the post

22    office with an indecipherable notation on it.  The others we

23    haven't heard back on includes the World Trade Center.

24          THE COURT:  OK.  What's the other one that was

25    undeliverable?

NAVIBROC

1          MS. HURD BROWN:  Off the top of my head, I don't

2     recall, your Honor.

3          THE COURT:  All right.  Why don't you meet and confer?

4     I am not inclined to grant any or order any additional

5     production for the DOE health file because Mr. Ellis has

6     represented he has produced what DOE has.  If there is a gap

7     between what DOE has and what your medical records have, that

8     is something you can explore later and as you get closer to

9     trial.  But since one of your -- one of the facts that you need

10    to establish is your disability and at the time and the times

11    of the onset of those disabilities, the medical records that

12    you have requested or HIPAA forms that you have provided should

13    get medical records that will support your dates and the

14    disabilities that you're asserting.  So, what I would like to

15    do is try to give you some time for you to work with Mr. Ellis,

16    figure out what happened with Dr. Fernandez Madrid's records,

17    whether you need to execute another one with a correct address

18    on it, and then figure out which one was returned as

19    undeliverable from the post office and maybe, you know, get a

20    little clarity on the addresses.  It seems like this should not

21    be something that should be terribly hard to do since you just

22    gave us all the names of the places and your latest addresses

23    on the record that you can go back and refer to the transcript

24    with Mr. Ellis and figure out, you know, if there is any that

25    need to be updated or reissued; OK?

NAVIBROC

1        MS. HURD BROWN:  OK.

2        THE COURT:  Mr. Ellis, how much time do you think you

3   might need to get that done?

4        MR. ELLIS:  I'm sorry, your Honor?  In terms of what

5   specifically?  The meet and confer?  We can meet and confer

6   with Ms. Hurd Brown by the end of the week.

7        THE COURT:  Right.  And then either reissue or get new

8   HIPAA releases so that you have sent out HIPAA releases that

9   don't get returned unexecuted.

10       MR. ELLIS:  We will send out your Honor, new HIPAA

11   authorizations just as soon as we get them from Ms. Hurd Brown.

12   But it is unpredictable as to when these medical providers, if

13   they ever will, respond to the HIPAA authorizations we send to

14   them.

15       THE COURT:  OK.  Ms. Hurd Brown, you wanted to say

16   something?

17       MS. HURD BROWN:  Yes.  What I am going to do to help

18   Mr. Ellis, I am going to reach out via email to New York

19   Langone and ask for the summary letters from Dr. Madrid.  I am

20   going to see if we can ask for those independent of the

21   operating reports.  So, I will take care of that because this

22   is too much, time consuming.

23       THE COURT:  It sometimes does take that long.  If you

24   still have a relationship or know how to contact Dr. Madrid, I

25   would suggest you reaching out that way.

NAVIBROC

1           MR. ELLIS:  Well, I have all of the letters myself

2     that they don't have.  Like I said, I put one on the record

3     when I was being deposed by them.  So, I have my records.

4           THE COURT:  OK.

5           MS. HURD BROWN:  All right.  So I will take and do

6     that and try to get that sent to him.  Everything else is going

7     to be sent to him.

8           THE COURT:  Sounds like it.

9           MS. HURD BROWN:  New York Presbyterian and New York

10    Langone.

11          THE COURT:  So, what I might do is hope that you can

12    get the medical records issue close to finished by December 1

13    or at least you will have a letter on December 1 telling me

14    what you are still waiting for and where in the process that

15    is; OK?

16          MS. HURD BROWN:  Your Honor, are we talking about all

17    of the upper Manhattan mental records and all of that should be

18    done?

19          THE COURT:  If it is not, if we haven't gotten it by

20    December 1, at least I would like to know when you have either

21    sent the request or asked them for the records, what it, if

22    anything, they have said about when you might get them so we

23    have a better idea for setting the next dates.  I am not going

24    to order that they be produced by December 1, Ms. Hurd Brown.

25          MS. HURD BROWN:  I understand.  But they were given to

NAVIBROC

1    him back in September.

2              THE COURT:  What was given to whom back in September?

3              MS. HURD BROWN:  The HIPAAs.  All of the HIPAAs were

4    sent to him, some of them as early as May, were sent to him.

5              THE COURT:  I know.  So, some of this is going to be

6    up to Mr. Ellis to explain by December 1 where everything is,

7    what we are still waiting for, whether you need a court to

8    order something happen, and all of that, OK?

9              MS. HURD BROWN:  OK.  All right.  Thank you, your

10   Honor.

11             THE COURT:  All right.  Is that it as far as document

12   discovery?  Let's ask defendants first.  As far as document

13   discovery from Ms. Hurd Brown or other third parties, is that

14   sort of what is outstanding?  We just covered it.

15             MR. ELLIS:  There is one more document, your Honor,

16   which is the remainder of Ms. Hurd Brown's TRAC records which

17   will also be produced for her by the end of the week.

18             THE COURT:  Track records you said?

19             MR. ELLIS:  These are travel reimbursement -- you will

20   have to forgive me, I don't recall what the A and C stand for.

21   These are reimbursement requests and records.

22             THE COURT:  So those will be produced by the end of

23   the week also?

24             MR. ELLIS:  Yes, your Honor.

25             THE COURT:  So, those will be produced by November 3.

NAVIBROC

1          MS. HURD BROWN:  We are talking this week?

2          MR. ELLIS:  Yes.

3          THE COURT:  November 3, I understood.

4          MS. HURD BROWN:  OK.  Thank you.

5          THE COURT:  OK.  All right, Ms. Hurd Brown, are there

6    other document issues outstanding for you?

7          MS. HURD BROWN:  The only other issues that I have,

8    and I have supplied him with documents is the disability

9    documentation and placards from New York State, Access-A-Ride

10   and that kind of stuff so that it shows the validity of the

11   disability that has been in existence since 2014.  All of that

12   was given to Mr. Ellis, and they are good up until 2027.

13         THE COURT:  2027?

14         MS. HURD BROWN:  Yes.  You have to be recertified for

15   each one of those entities to be able to have them, and it is a

16   process.  And, I was just recently recertified in 2022.

17         THE COURT:  OK.  Sorry.  I thought you were saying you

18   were looking for records up through 2027.  OK, you have been

19   recently recertified to be entitled to those services through

20   2027?

21         MS. HURD BROWN:  Yeah.

22         THE COURT:  OK.  All right.  So as far as documents

23   and medical records I would like a letter -- let's get a status

24   letter on December 1 from Mr. Ellis.  Ideally, if you can break

25   it down similarly to how we discussed it just now with naming

NAVIBROC

1    particular HIPAA releases and providers and where we are in the

2    process of each one, that would be great.

3              Ms. Hurd Brown, I am not going to ask you to write a

4    letter on December 1 because you have provided the HIPAA

5    releases.  It is kind of up to them to get that information and

6    follow up with the providers, OK?  You are certainly free to

7    write a letter after December 1 if you think something is

8    inaccurate, but you don't have to write a letter.

9              MS. HURD BROWN:  I understand.  I would like to go on

10   record, your Honor, and state that I will try to do an outreach

11   call to all of the entities that he is having issues with and

12   see if I can assist to have it facilitated.

13             THE COURT:  That would be helpful.

14             MS. HURD BROWN:  I am trying to help Mr. Ellis.

15             THE COURT:  Let's talk about depositions.

16   Ms. Hurd Brown has been deposed.  So, are there other

17   depositions that is defendants intend to take other than

18   Ms. Hurd Brown's?

19             MR. ELLIS:  No, your Honor.

20             THE COURT:  OK.  And Ms. Hurd Brown, I understand you

21   have two more depositions you'd like to take, or more than

22   that?

23             MS. HURD BROWN:  No, I have more than that, your

24   Honor.  Mr. Ellis is taking -- I don't know what is the word

25   for it, but he has sort of objected to some of the people I

NAVIBROC

1    would like to depose.

2              THE COURT:  Why don't we start with the easiest and

3    then go to the harder ones; OK?  So, Principal Gabbard is no

4    longer of this world, so you are not going to take his

5    deposition.  OK, what is the next easiest?  Is there anything

6    that the defendants are not disagreeing with?  Who else is on

7    your list?  Eric Freidman, right?

8              MS. HURD BROWN:  Yes, Mr. Freidman.

9              THE COURT:  OK.  No dispute on that, right?

10             MS. HURD BROWN:  No.

11             THE COURT:  No dispute on deposing him.

12             MS. HURD BROWN:  Well, except I think in his letter of

13   ECF 100, Mr. Ellis wants me to refrain from asking about

14   anything regarding the 3020a with Mr. Freidman if I am not

15   mistaken.  That is in his letter.

16             THE COURT:  OK.  Let's get the names out and figure

17   out who you agree can be deposed before we start fighting about

18   what you can ask, OK?  No dispute on deposing Eric Freidman and

19   also no dispute on deposing John Garcia, right?

20             MS. HURD BROWN:  No.

21             THE COURT:  OK.  What about Ms. Abnorma Lisa and

22   Ms. Hanes?

23             It says they are no longer employed by DOE.  How badly

24   do you need them, Ms. Hurd Brown?

25             MS. HURD BROWN:  I would say very strongly because

1   that is when my accommodation and everything was thrown out the

2   window.  I guess with Ms. Abnorma Lisa as the director of

3   Affinity, all of my accommodations for my disability were

4   thrown out.  I would like to find out why and how that

5   materialized because the impact was very substantial.  So, I

6   would like to depose her.  I do have her address and subpoena

7   her and serve her.  I have already tracked down her address.

8           THE COURT:  OK.  Is there any issue here, Mr. Ellis,

9   on whether Ms. Abnorma Lisa was, in fact, the person who took

10  away the car accommodation.  Is the only objection to Abnorma

11  Lisa and Hanes depositions they are to longer employed by DEO?

12          MR. ELLIS:  No, your Honor.  We have a couple of

13  additional objections, one of which is relevance.

14          I understand that Alexandra was the director of the

15  affinity schools network, but that doesn't mean she was

16  personally involved in any attendance teachers car-like

17  accommodation related requests.  That would be, in this case,

18  Eric Freidman, who was Ms. Hurd Brown's immediate supervisor

19  during the relevant time period and potentially John Garcia who

20  is a financial director.

21          Additionally with respect to Alexandra, Ms. Hurd Brown

22  had indicated during a meet and confer that she wanted to

23  depose this individual as to conversations that she may have

24  had with DOE attorneys that led to the commencement of state

25  disciplinary proceedings against Ms. Hurd Brown which would not

NAVIBROC

1   only be protected by attorney client privilege, but such

2   testimony would violate the Younger abstention doctrine.  With

3   respect to Ms. Haze, she was, as I understand it, the director

4   of the DOE's medical leaves and record administration office.

5   Again, in that capacity, she would not be expected to be

6   personally involved in any individual accommodation request nor

7   are there any documents that we have produced or allegations in

8   the complaint that would show this individual's personal

9   involvement in this specific issue remaining in this case which

10  the alleged denial of a car-accommodation request.

11          THE COURT:  All right.  Ms. Hurd Brown, why don't you

12  take Freidman's and Garcia's depositions first.  I am not

13  hearing that Ms. Abnorma Lisa or Ms. Hanes were directly

14  involved in the remaining claim here which is the taking away

15  of the car, OK?

16          MS. HURD BROWN:  OK.  But, your Honor, the

17  accommodations, the car, was contractually authorized which is,

18  in itself, OK.  But you also had stair climbing, limited

19  mobility, I had early morning hours, it was a second-floor

20  office.  So, those accommodations were in through the medical

21  office accommodations.  So, Mr. Ellis is limiting everything

22  to, oh, just the car.  The car was the final straw of all of

23  the accommodations.  So, to say that Ms. Anna Lisa.

24          THE COURT:  No, no.  We have been through two reports

25  and recommendations on motions to dismiss.  As far as I

NAVIBROC

1    understand it, the only remaining claim in this case is about

2    the car accommodation being taken away; OK?  And so, when you

3    are in discovery now, it is going to be about who made that

4    decision that it should be taken away.  And what I am hearing

5    from Mr. Ellis is that neither Ms. Abnorma Lisa nor Ms. Hanes

6    were involved in any accommodation request or decisions in the

7    alleged denial of the car accommodation.  And Mr. Ellis also

8    said that the likeliest people to have been directly involved

9    and to have personal knowledge of the accommodation request and

10   the denial or the removal of the car accommodation would be

11   Mr. Freidman and potentially Mr. Garcia.  So, all I was saying

12   was I was suggesting that you not make any moves to try to

13   depose Ms. Abnorma Lisa or Ms. Hanes until after you completed

14   the depositions of Mr. Freidman and of Mr. Garcia.

15           MS. HURD BROWN:  May I?

16           THE COURT:  Yes.

17           MS. HURD BROWN:  Mr. Ellis's objection is wrong

18   because this is a contractual authorization under my contract

19   as an attendance teacher and that cannot be made by a

20   supervisor.  And that's what Mr. Freidman is.  Mr. Freidman was

21   a supervisor that I only saw maybe once a month.  So, he is not

22   the one that could authorize such a removal of accommodation.

23   It has to go up higher, either to a superintendent or someone

24   above that.  It cannot be made by a supervisor to break a

25   contract.  The Board of Ed is not structured that way in the

NAVIBROC

1    hierarchy of their structure.  So, if it's not Ms. Abnorma

2    Lisa, then I guess we will go with the superintendent.

3         THE COURT:  Maybe you could serve an interrogatory

4    asking that question and that might actually get you some names

5    and appropriate names of somebody who depose if you don't think

6    it is Freidman or Garcia.  Why don't you consider serving an

7    interrogatory, if you haven't already, about who made these

8    decisions?

9         And look, Ms. Hurd Brown, I understand you are

10   frustrated.  But some of what you are saying right now is

11   something that will go to the trier of fact, all right?  You

12   are saying that the car accommodation was something that was

13   authorized in your contract.  Do you have a written contract

14   that says that?  That is part of your proof, part of what you

15   would need to prove before you get to the next step of it being

16   taken away.

17        All right.  So, that is where I am with Freidman and

18   Garcia first.  I am going to suggest that you serve some

19   written requests to the defendants about the identities of the

20   people who made any of these decisions in a way that better

21   narrows and streamlines who should be deposed.

22        I am not going to allow to you depose Ms. Abnorma Lisa

23   and Ms. Hanes at this time.  I have already asked to you wait

24   until after you have deposed Mr. Freidman and Mr. Garcia.

25        MS. HURD BROWN:  All right, your Honor.  Thank you.

NAVIBROC

1          THE COURT:  I don't want to have to order that yet.

2     But, you know, if you get information during those depositions

3     that further supports your ability or the reasoning to depose

4     Ms. Abnorma Lisa and Ms. Hanes, I will entertain it then.  The

5     first thing I have heard -- again, I am trying to get you

6     through discovery so that you can get to a resolution on the

7     merits.  And what I heard from Mr. Ellis is that Mr. Freidman

8     and Mr. Garcia, whom they don't contest, are likely to have the

9     most information from them about that.  So, get the most

10    information you can from Mr. Freidman and Mr. Garcia and then

11    we will decide later on Abnorma Lisa and Hanes.

12         All right.  What about Beth Norton?  Are you still

13    seeking the deposition of Beth Norton?

14         MS. HURD BROWN:  She is UFT.  I'm entertaining that.

15    So, I guess I would have to depose her for the attendance

16    teacher contract since that is what we are going to have to

17    use.

18         THE COURT:  I am going to caution you very strongly

19    not to because if she is a lawyer, and she's the lawyer of your

20    union, she may not be able to talk about a lot of things

21    because they are going to be either privileged or work product.

22         MS. HURD BROWN:  All right.  Thank you, your Honor.

23         THE COURT:  Think about that.

24         MS. HURD BROWN:  OK.

25         THE COURT:  What about human resources director/case

NAVIBROC

1    manager?

2           MS. HURD BROWN:  I don't have a name.  So, we can

3    eliminate that.

4           THE COURT:  OK.  You know, it may also come to be that

5    you hear things in the deposition of Mr. Freidman and

6    Mr. Garcia that give you more information about whether there

7    is another person who you haven't found yet or whose identity

8    you don't know yet who might be worth a deposition, OK?

9           Then what about John Woods?

10          MS. HURD BROWN:  He is the arbitrator on the 3020a.  I

11   am going to leave that open because I don't know where that

12   case is going at this point.

13          THE COURT:  I am also going to suggest to you that you

14   not only leave it open but not pursue that deposition.  You

15   can't depose someone who is presiding over a parallel state

16   proceeding in the federal courts.  And it's probably not

17   technically relevant here.

18          All right.  Then anybody else?  I see on the list

19   Dr. Naughton and Chancellor Banks and Superintendent Walsh.

20          MS. HURD BROWN:  Dr. Naughton, yes.  I don't even know

21   who this is, and I need to depose him.  There are no notes, no

22   medical notes, no summary of his decisions on my accommodations

23   or anything.

24          THE COURT:  So, who is he then?

25          MS. HURD BROWN:  All I know is he worked for the Board

NAVIBROC

```
1    of Ed, so Mr. Ellis has informed me.  First time I have seen
2    that name.  So, I have no idea.  But yes, he did make a ruling
3    on the sabbatical medical.  He denied the medical sabbatical.
4    That is the first time I have seen his name.
5              THE COURT:  So why do you want to depose him?
6              MS. HURD BROWN:  The medical sabbatical that was
7    requested was also part of my knee accommodation, and my
8    knee -- my car was taken away and I was any a medical crisis at
9    that point and tried to get the sabbatical.  So, I want to find
10   out how he arrived at his decision and was my accommodation and
11   disability taken into consideration when he made that decision?
12   So, I need to know those questions.  Those questions need to be
13   asked and answered.
14             THE COURT:  Mr. Ellis, can you shed any light?
15             MR. ELLIS:  Perhaps a little, your Honor.  I can
16   confirm Dr. James Naughton is a DOE employee and that he is
17   still currently employed by the DOE.  I understand that his
18   name appears in Ms. Hurd Brown's file with the DEO medical
19   leaves and records administration office, and that he was
20   involved in the denial of a medical sabbatical requested by
21   Ms. Herd Brown.  So, I would not say that he was the one who
22   denied it.  I don't think DOE doctors actually grant or deny
23   accommodation so much as they might evaluate someone as part of
24   a physical.  That hadn't been said.  That denied medical
25   sabbatical is not a part of the claim which is for the denial
```

NAVIBROC

1    of her request to use a personal car to make home visits.  Nor

2    is there any indication that Dr. James Naught, besides

3    evaluating Ms. Hurd Brown's medical condition was personally

4    involved in this case and should be subjected to a deposition

5    here.

6              THE COURT:  So, then who was part of the decision

7    making in Ms. Hurd Brown's claim here?  She is saying it can't

8    have been Mr. Freidman or Mr. Garcia because supervisors are

9    not the ones that get to make those decisions.

10             MR. ELLIS:  We would dispute that, your Honor.  It is

11   my understanding it was, in fact, Eric Freidman who denied

12   Ms. Hurd Brown's -- and it is a bit complicated because some of

13   her requests for a personal car were granted.  Others were

14   denied for specific reasons.  All TRAC requests for attendance

15   teachers in Ms. Hurd Brown school network, I do believe would

16   have gone to Eric Freidman as the attending supervisor of that

17   network.  And then once approved, they would have been sent to

18   John Garcia, the financial director who would have processed

19   the reimbursement.  Certainly, if, Eric Freidman or John

20   Garcia, at their depositions, testify otherwise and identify

21   other individuals, we would certainly reevaluate our position

22   as to the permissibility of Ms. Hurd Brown taking and deposing

23   other DOE employees here.

24             THE COURT:  OK.  The other thing you might want to

25   consider is whether Ms. Freidman or Mr. Garcia or somebody else

NAVIBROC

might be prepared to testify about the processes generally, not just what happened with Ms. Hurd Brown, but a little bit about what Ms. Hurd Brown is saying about how she believes that the ability to use the car was in the contract and that is somehow taken away and whether and how those decisions get made.

Now, I understand there is a lot of daylight between what Ms. Hurd Brown was asserting and what may have -- what the DOE may or may not have done or may have been able to do.  But my suggestion is if we don't want to get stuck litigating every single individual Ms. Hurd Brown wants to depose, try to find a way to get her the information in some useable form through depositions with deponents that you are willing to provide in the first instance, of course, if they have the knowledge.  The other alternative might be after Mr. Freidman and Mr. Garcia's depositions are completed, we may need to dig in a little bit to see if there are discreet issues that might be amenable to something like a 30(b)(6) deposition; OK?

Ms. Hurd Brown, you are making that face.  30(b)(6) is Federal Rule of Civil Procedure 30(b)(6).  Which talks about depositions of entities or organizations.  So, it might not be that there is one person that knows the answer to a particular question.  But if you have particular questions or topics, then you may be able to get a deposition of a witness who has been prepared to answer that question even though that is not what they normally do as their job.  OK.

NAVIBROC

1            The other thing you could do is you could maybe try to

2    an interrogatory or something like that.  I would ask you to

3    hold off on that until you see what you get from Mr. Freidman

4    and Mr. Garcia so that any discovery request you serve after

5    that are really to plug in holes, not going over the same

6    ground you would go over with Mr. Freidman and Mr. Garcia, OK?

7            MS. HURD BROWN:  You are saying Dr. Naughton should be

8    held off?

9            THE COURT:  Held off, yes.

10           We need to wind up for the court reporter's sake.

11           So, the other names in ECF 100, I am also going to ask

12   you, Ms. Hurd Brown, to hold off on.  I think you have to take

13   some time after you get the transcript to review and I think

14   you will see what I am trying to get done here, OK?

15           MS. HURD BROWN:  Your Honor, Mr. Ellis, just now, the

16   DOE commonly states -- he is talking about a track for

17   reimbursement that has nothing to do with the car usage.  A car

18   usage is independent -- wait a minute, let me finish.

19           THE COURT:  No, no.  You can't because the court

20   reporter needs to leave.  And if the court reporter leaves, we

21   won't have a transcript.

22           MS. HURD BROWN:  OK.

23           THE COURT:  So this is something -- you have a lot to

24   do.  You have depositions to do.  You know, Mr. Ellis has a lot

25   of homework also.  I am going to get a status letter December 1

NAVIBROC

```
1   on the status of the medical records.  Hopefully by then you

2   will have some sense of when you would be deposing Mr. Freidman

3   and Mr. Garcia.

4              MS. HURD BROWN:  As soon as possible.

5              THE COURT:  Then, after that, I will see what you have

6   to say.  If you want to respond to that letter, you are free to

7   do so.  And then we will probably set another status

8   conference.

9              MS. HURD BROWN:  Do I have to go with the guidelines

10  he stated in his letter ECF 100?

11             THE COURT:  What do you mean the guidelines he stated

12  in the letter?

13             MS. HURD BROWN:  OK.  If it is not on the record, then

14  I won't bother.

15             THE COURT:  I don't understand what you are saying

16  about things being on record or not.  ECF 100 is a letter that

17  is filed on the docket.  There is something in there, you are

18  saying about guidelines.  I don't understand what you mean

19  because I give the guidelines, not your opponent.

20             MS. HURD BROWN:  OK.

21             THE COURT:  Oh, you mean about not asking questions

22  about the 3020?

23             MS. HURD BROWN:  Yes.

24             THE COURT:  Correct.  That protective order is

25  granted.
```

NAVIBROC

1              All right.  Thank you very much.  We are adjourned.  I

2    am going to ask Mr. Ellis to order a copy of the transcript,

3    provide a copy to Ms. Hurd Brown.  Thank you.

4              MS. HURD BROWN:  Thank you, your Honor.

5              (Adjourned)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25